**SO ORDERED.**

**SIGNED this 28 day of September, 2007.**



_____
JANICE MILLER KARLIN
UNITED STATES BANKRUPTCY JUDGE

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| In re: ) | | |
| DEBORAH ANN MARTIN ) | Case No. 06-41010 | |
| ) | Chapter 7 | |
| Debtor. ) | | |
| _____ ) | | |
| ) | | |
| DEBORAH ANN MARTIN ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | Adversary No. 07-7067 | |
| ) | | |
| AMERICAN FAMILY MUTUAL ) | | |
| INSURANCE COMPANY, et al. ) | | |
| ) | | |
| Defendant. ) | | |
| _____) | | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION TO DISMISS**

This matter is before the Court on Defendants' Motion to Dismiss[1] this adversary proceeding on the basis that Plaintiff's Complaint fails to state a claim. This matter constitutes a core proceeding, and the Court has jurisdiction to decide it.[2]

## II.  STANDARD FOR A MOTION TO DISMISS PURSUANT TO RULE 7012(b)

Federal Rule of Bankruptcy Procedure 7012(b) incorporates Federal Rule of Civil Procedure 12(b) into all adversary proceedings. To prevail on a Rule 12(b)(6) motion to dismiss for failure to state a claim, the movant must demonstrate beyond a doubt that there is no set of facts in support of plaintiff's theory of recovery that would entitle plaintiff to relief.[3] In evaluating a motion to dismiss for failure to state a claim, all well-pleaded allegations will be accepted as true and will be construed in the light most favorable to plaintiff.[4]

## III.  FACTS

Plaintiff, Deborah Ann Martin, filed a Chapter 7 bankruptcy petition in September 2006 and received a discharge. In January 2007, she interviewed for a position with Defendants American Family Mutual Insurance Company, John Deutsch Agency, Inc. and John Deutsch ("Defendants"), but was not hired.[5] Plaintiff then filed this adversary

---

[1] Doc. 13.

[2] 28 U.S.C. §§ 157(b) and 1334.

[3] *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence, Kansas*, 927 F.2d 1111, 1115 (10th Cir. 1991).

[4] *In re American Freight System, Inc.*, 179 B.R. 952, 956 (Bankr. D. Kan. 1995).

[5] See Doc. 1, Plaintiff's Complaint, at ¶¶ 7-8.

2

proceeding claiming that Defendants violated the anti-discrimination provisions contained in 11 U.S.C. § 525(b)[6] by refusing to hire her solely on the basis that she had previously filed a bankruptcy petition. Although Defendants vigorously deny that their decision to not hire Plaintiff was solely based on her having filed bankruptcy, they nevertheless contend Plaintiff's Complaint must be dismissed because § 525(b), the only statute relied on by Plaintiff for relief, does not protect an individual who has filed bankruptcy from discriminatory hiring practices. In other words, Defendants contend Plaintiff has failed to state a claim upon which relief can be granted to her.

Given that this matter is before the Court on a Rule 12(b)(6) motion, the Court must assume for purposes of this motion that Defendants did refuse to hire Plaintiff based solely on the fact she had previously filed a bankruptcy petition. The only issue before the Court is whether such conduct by these private employers is prohibited by § 525(b). As explained in more detail below, the Court finds that § 525(b) does not extend to discriminatory hiring practices by private employers, and thus grants Defendants' Motion to Dismiss.

## IV. ANALYSIS

Section 525 of the Bankruptcy Code, which prohibits certain forms of employment discrimination against persons who have filed for bankruptcy, provides, in pertinent part, as follows:

---

[6]This case was filed after October 17, 2005, when most provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 became effective. All future statutory references are thus to the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 11 U.S.C. §§ 101 - 1532 (2005), unless otherwise specifically noted. Section 525 was not amended by BAPCPA.

> (a) . . . **a governmental unit may not . . . deny employment to, terminate the employment of, or discriminate with respect to employment against, a person** that is or has been a debtor under this title or a bankrupt or a bankrupt debtor under the Bankruptcy Act, . . . solely because such bankrupt debtor is or has been a debtor under this title or a bankrupt or debtor under the Bankruptcy Act, has been insolvent before the commencement of the case under this title, or during the case but before the debtor is granted or denied a discharge, or has not paid a debt that is dischargeable in the case under this title or that was discharged under the Bankruptcy Act.
>
> (b) **No private employer may terminate the employment of, or discriminate with respect to employment against, an individual** who is or has been a debtor under this title, [or] a debtor or bankrupt under the Bankruptcy Act, . . . solely because such debtor or bankrupt–
>
> (1) is or has been a debtor under this title or a debtor or bankrupt under the Bankruptcy Act.
>
> (2) has been insolvent before the commencement of a case under this title or during the case but before the grant or denial of a discharge; or
>
> (3) has not paid a debt that is dischargeable in a case under this title or that was discharged under the Bankruptcy Act.[7]

Subsection 525(a) clearly applies only to governmental entities, and Plaintiff does not suggest that any of these Defendants is a governmental entity.

Plaintiff therefore relies on the provisions of § 525(b), which is applicable to private employers, such as Defendants in this case. Plaintiff claims that the language prohibiting discrimination "with respect to employment" contained in subsection (b) is broad enough to cover all employment decisions—including failure to hire a prospective employee, and thus bars Defendants' decision not to hire her solely as a result of her bankruptcy filing.

---

[7] 11 U.S.C. § 525(a)–(b) (emphasis added).

4

The issue whether § 525(b) prohibits discrimination in hiring decisions by private employers has not been decided by the Court of Appeals for the Tenth Circuit. This Court will, therefore, first turn to the statute for guidance. When interpreting statutes, courts "'must presume that [the] legislature says in a statute what it means and means in a statute what it says there.'"[8] "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[9]

Congress expressly prohibited governmental entities from denying employment solely because a person had filed for bankruptcy, in §525(a), by stating "a governmental unit may not . . . deny employment." That specific reference to denying employment contained in § 525(a) is conspicuously absent from § 525(b). The Court must presume that if Congress saw fit to specifically prohibit governmental employers from discriminating against debtors when making hiring decision, but failed to place the same restriction on private employers, it did so intentionally.[10]

---

[8]*Dodd v. United States*, 545 U.S. 353, 357 (2005) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249 (1992)).

[9]*Russello v. United States*, 464 U.S. 16, 23 (1983).

[10]It is not uncommon for a governmental entity to place tighter restrictions on its own employment policies than it places on private sector employers. For example, Kansas Governor Sebelius recently announced that all state agencies falling under the executive branch are now barred from discriminating based upon a person's sexual orientation or gender identity, while no such government-imposed restriction falls on any private employer in Kansas. *See* Kansas Exec. Order No. 07-24 (August 31, 2007). One reason for this difference is likely as a result of the process of political decision-making; the constituency encompassing private employers likely has more effective, and well-funded, lobbyists to advocate against potential new causes of action against them than do discrete governmental agencies. For that reason, the Court cannot find Congress' decision to not extend protection from discrimination to prospective employees of private sector employers absurd.

5

Other principles of statutory construction also support a finding that Congress declined to extend the bar against discriminatory hiring decisions to private employers. As noted above, Plaintiff contends that § 525(b) bars discrimination in hiring by private employers because it contains the broad language barring discrimination "with respect to employment." If that contention is true, however, then the phrase "with respect to employment" would also logically include firing existing employees. However, § 525(b) specifically and already provides that "[n]o private employer may **terminate** the employment" of a debtor solely because of the Debtor's bankruptcy filing. Thus, if the Court were to read the phrase "with respect to employment" so broadly that it encompassed both hiring and firing decisions, it would render the express anti-termination provision already found in § 525(b) redundant and violate an "elementary canon of construction that a statute should be interpreted so as not to render one part inoperative."[11]

In addition, even if the Court were to ignore that canon of construction, and only include hiring—and not firing---decisions within the reach of the "with respect to employment" language, this canon of statutory construction is still violated by Plaintiff's argument. Congress elected to include the phrase "with respect to employment" in both subsections 525(a) and 525(b). Plaintiff provides no argument to justify a finding that Congress intended that language to mean one thing in one subsection, and something entirely different in the subsection immediately following, and the Court can think of none. If the

---

[11]*See Colautti v. Franklin*, 439 U.S. 379, 392 (1979); *Stinson v. BB & T Investment Serv. Inc.*, 285 B.R. 239, 248 (Bankr. W.D. Va. 2002) (noting that if § 525(b) included hiring based on the "discrimination with respect to employment against" language, then it would cause the anti-termination provision to be redundant).

6

Court were to find that "with respect to employment" encompassed hiring decisions, the specific reference to discrimination with respect to hiring contained in § 525(a) would be rendered meaningless, as well. As the court found in *In re Stinson*, it is more likely that the phrase discrimination "with respect to employment" refers neither to hiring nor termination, but to other terms and conditions of employment, such as transfers, demotions, or modifications to employment terms.[12]

Plaintiff raises several other arguments in opposition to Defendants' motion to dismiss. First, Plaintiff claims, without benefit of any authority, that procedurally the Defendants must first admit that they did, in fact, discriminate against Plaintiff or "their motion cannot be seriously considered by this Court and should be dismissed out of hand."[13] This argument is completely without merit.

Although the Court must presume, for purposes of this motion, that all of the underlying facts alleged in the petition are true, no defendant is required to admit to the underlying allegations before being able to file a motion to dismiss under Rule 12(b)(6). It would be an horrendous waste of judicial resources to require a trial of the merits of the case, after full discovery, only to then have to sustain a Motion for Judgment as a Matter of Law pursuant to Rule 52©[14] of the Federal Rules of Civil Procedure at the conclusion of

---

[12] 285 B.R. at 241.

[13] Doc. 14, p. 2.

[14] Rule 52(c), which applies to adversary proceedings by Rule 7052 of the Federal Rules of Bankruptcy Procedure, provides that "[i]f during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated only without a favorable finding on that

7

Plaintiff's case because under no set of facts could the Plaintiff prevail under the controlling law.[15]

Plaintiff also asks the Court to adopt the reasoning set forth in *Leary v. Warnaco, Inc.*,[16] which is the only case the Court has found so holding, that the phrase "with respect to employment" contained in § 525(b) "includes by its plain meaning all aspects of employment including hiring, firing and material changes in job conditions."[17] The court in *Leary* rejected the statutory construction arguments that compared the language in § 525(a) to that in § 525(b), instead attributing the omission of a specific reference to hiring in § 525(b) to a belief that "the scrivener was more verbose in writing § 525(a)."[18]

This Court is unwilling to discard well established canons of statutory interpretation to find that Congress' failure to include a specific reference to hiring in § 525(b), after expressly including it in subsection (a), was merely the result of a less verbose scrivener.[19]

"Where Congress includes particular language in one section of a statute but omits it

---

issue...."

[15]*Crane Constr. Co. v. Klaus Masonry*, 71 F.Supp.2d 1138, 1144 (D. Kan. 1999) (holding that motion to dismiss would be allowed, even though untimely, because if points raised in motion were made during trial, plaintiff would lose on motion for judgment as a matter of law, and allowance of a motion would save needless expense for the parties in preparing for trial, as well as conserve judicial resources).

[16]251 B.R. 656 (S.D.N.Y. 2000).

[17]*Id.* at 659.

[18]*Id.*

[19]In addition, as the court noted in *Fiorani v. CACI,* 192 B.R. 401, 406 (E.D.Va. 1996), "[l]egislative history relating to subsection (b) is remarkably sparse, and says nothing of relevance to the question presented by this case. *See* John C. Chobot, *Anti-Discrimination Under the Bankruptcy Laws*, 60 Am.Bankr.L.J. 185, 197 (1986) ("The scant legislative history of the 1984 Amendments Act does not explain why the 'deny employment to' aspect was omitted from section 525(b).")

8

in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."[20] Read in a vacuum, this Court agrees that the phrase "with respect to employment" would likely include hiring decisions. But we do not have a vacuum here. The Court rejects the *Leary* decision, which exalts the admirable policy of giving debtors a fresh start over clear statutory language.

The Court instead sides with the overwhelming majority of courts that have been faced with this issue in finding that the overall statutory language contained in § 525 shows that Congress did not intend to cover hiring decisions by private employers in its anti-discrimination provision.[21] As noted by the court in *In re Stinson*, "Although the result reached by the Debtor's interpretation may be desirable, the task of achieving that end is better left to Congress, not this court."[22]

Finally, Plaintiff raises policy considerations, and questions why Congress would elect to provide greater protection to persons seeking employment with the government and to

---

[20]*Russello*, 464 U.S. at 23 (1983).

[21]*See, e.g. Cord v. Skinner Nurseries, Inc. (In re Cord)*, 2004 WL 2923845 (Bankr. M.D. Fla. 2004) (holding "It is well established now by several cases, that Section 525(b) of the Code applies only to actions taken after an employment relationship has been established and does not cover a situation which might be a discriminatory hiring practice by private employers."), *In re Stinson*, 285 B.R. 239 (Bankr. W.D. Va. 2002) (holding "Section 525(b) prohibits discrimination with respect to employment, but this prohibition does not include hiring decisions."), *In re Hardy*, 209 B.R. 371 (Bankr. E.D. Va. 1997) (requiring an employment relationship as a prerequisite for the applicability of § 525(b)), *Fiorani v. CACI*, 192 B.R. 401 (E.D. Va. 1996) (holding Congress' inclusion of an explicit reference to hiring in § 525(a), juxtaposed with its deliberate omission in § 525(b) six years later, makes unmistakably clear that subsection (b) does not reach hiring decisions), *Pastore v. Medford Savings Bank*, 186 B.R. 553 (D. Mass. 1995) (holding that § 525(b) does not provide a cause of action of failure to hire), *In re Hopkins*, 81 B.R. 491 (Bankr. W.D. Ark. 1987) (holding § 525(b) reaches private employers only after an offer of full-time employment has been extended); and *In re Madison Madison Intl. of Illinois*, 77 B.R. 678 (Bankr. E.D. Wis. 1987) (stating § 525(b) does not apply to hiring decisions).

[22]*In re Stinson*, 285 B.R. at 250.

9

persons who already have jobs (by prohibiting termination based on bankruptcy filing) than it provides to individuals who are seeking employment in the private sector in hopes of making good on the fresh start provided by their bankruptcy filing. Plaintiff suggests that because Defendants are unable to justify why Congress made that choice, that the Court should interpret the statute to satisfy the fresh start policy. It is not this Court's role, however, to rewrite statutes to conform with its own sense of fairness or good policy. Instead, it is the Court's duty to interpret the will of Congress, and once that will is made express by the terms of a statute, to enforce the statute as written.[23]

## V. CONCLUSION

Based upon the Court's interpretation of § 525(b), especially when read together with § 525(a), the Court finds that Congress did not elect to prohibit, under § 525(b), discrimination in hiring decisions by private employers based on whether the potential employee has filed bankruptcy. The phrase "with respect to employment," as used in § 525(b), cannot be read so broadly as to include hiring decisions without rendering other provisions of § 525 redundant and meaningless. Therefore, the Court grants Defendants' motion to dismiss pursuant to Rule 12(b)(6).[24]

---

[23]*See Hartford Underwriters Ins. Co. v. Union Planters Bank*, 530 U.S. 1, 13-14 (2000) ("Achieving a better policy outcome—if what petitioner urges is that—is a task for Congress, not the courts") and *United States v. McIntosh,* 236 F.3d 968, 972 (8th Cir. 2001) (holding that irrespective of how much we dislike a particular outcome, or how we see the equities of the case, we are not at liberty to rewrite the statute).

[24]Although Defendants asked for oral argument, the Court finds that oral argument would not materially advance the Court's understanding of the issues. The request for oral argument is, therefore, denied.

In addition to requesting dismissal, Defendants have also requested an award of attorney fees and costs in connection with defending this case. Defendants cite no authority in support of their request for attorney fees, thus the Court assumes they are seeking these fees only under the Court's inherent power to award fees.[25] "Such awards are appropriate 'only in exceptional cases and for dominating reasons of justice.'"[26] This Court can only deviate from the traditional American rule that disfavors fee awards when there is a showing that the losing party acted "in bad faith, vexatiously, wantonly, or for oppressive reasons."[27] Absent a finding of bad intent or an improper motive, the Court cannot award attorney fees absent specific authority for doing so.[28]

The Court does not find that this action was brought with bad intent or for an improper motive. Plaintiff presented a colorable argument for relief, supported by at least one court, which, although dismissed by this Court, was clearly not sufficiently frivolous to warrant an award of attorney fees. As the prevailing party, Defendants are entitled to an award of their costs, pursuant to Fed. R. Bankr. P. 7054(b).

**IT IS, THEREFORE, BY THE COURT ORDERED** that Defendants' Motion to Dismiss is granted.

---

[25] If Defendants contend that there is some statutory or other specific basis for an award of attorney fees in this case, they are free to raise that issue through a timely filed motion for reconsideration.

[26] *Mountain West Mines, Inc. v. Cleveland-Cliffs Iron Co.*, 470 F.3d 946, 953 (10th Cir. 2006) (quoting *Cornwall v. Robinson*, 654 F.2d 685, 687 (10th Cir. 1981)).

[27] *Id.* at 953-54.

[28] *Id.* at 954.

**IT IS FURTHER ORDERED** that Defendants' costs in this action are assessed against Plaintiff pursuant to Fed. R. Bankr. P. 7054(b), but that Defendants' request for an award of attorney fees is denied.

**IT IS FURTHER ORDERED** that the foregoing constitute Findings of Fact and Conclusions of Law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Fed. R. Bankr. P. 9021 and Fed. R. Civ. P. 58.

###